Appeal from the Western District of North Carolina, Case No. 14-1675. Mr. McKeon, you want two minutes for rebuttal? Yes, Your Honor. Thank you. Good morning. May it please the Court. I would like to talk about three issues today and start with jurisdiction. Although the District Court properly recognized that personal jurisdiction is a threshold issue, the Court jumped right over that issue to get to the preliminary injunction. And what we know now is that ten months after joining LG's battery business, the May 21st order of the District Court confirmed that it did not have personal jurisdiction over the Korean LG entity, LGC, at the time it issued the injunction order. What do we do? I mean, clearly, it is a threshold question. It's an important issue. The Court shouldn't enter injunctions when it doesn't have jurisdiction or at least a substantial likelihood of jurisdiction over a party. But the Court has now said that it has jurisdiction. If we send it back on that ground, don't we just see it again in a month? Well, first of all, Your Honor, I do believe that the order needs to be vacated as a procedural matter because we know it didn't have jurisdiction at the time the order was issued. But you are right. There's a certain logistical problem here. Wouldn't you rather have us reverse the preliminary injunction on the merits? That way we don't have to see it again, I mean, assuming we agree with you, rather than sending it back for another try. Well, there's two things the Court can do. One is the Court, of course, can reverse on the merits and send it back down and we go to trial on the merits. And certainly that would be the decision way to proceed. The second thing is, of course, the Court can take jurisdiction over the preliminary injunction order as a matter of attendant appellate jurisdiction. There's precedent for that. And review that. We can have further briefing and we brief that up. And the Court can review that because we certainly continue to challenge personal jurisdiction over the LG parties in North Carolina. And the Court can deal with that now in conjunction with this appeal. And the problem has been created, of course, because the Court didn't treat it as a threshold issue. And here we are on appeal, arguing on a preliminary injunction, when we believe that there is no personal jurisdiction over either LG entity. And the Court had created this problem. We've warned the Court, we've invited it to the Court to address personal jurisdiction first, and it didn't. I have trouble with the concept that personal jurisdiction isn't a threshold jurisdictional question. And I know that there are several circuits, Fifth Circuit and others, that seem to say that. It seems that in our circuit, we just simply treat it as part of likelihood of success and say, instead of having to address it first, you have to at least find that there's a substantial likelihood. Is that how you understand? I mean, there's clearly a circuit split on this issue. There is. The Court has used that language before about likelihood finding it likely. I do think, frankly, that that conflicts with Supreme Court precedent that says you have to have personal jurisdiction over a party before you can join it. And that's clear. And therefore, you can't get into a likelihood issue. You have to determine it. And of course, it's got to be raised by the party, and it was raised by us. But if that's the case, then arguably we don't even get to the merits because we have to look at not just our jurisdiction, but the lower court's jurisdiction. If the lower court didn't have jurisdiction to even enter the injunction, then it has to be set aside and sent back. That's correct, Your Honor. I think that at a minimum, if the court were going to refrain from getting to the merits, it needs to do that. There is the logistical issue created by the fact that the court waited 10 months to rule on it, that we are now here, and the preliminary injunction is before the court. We believe that should be reversed. It's not sustainable on the record. We should not be going back down and redoing a preliminary injunction. We should be proceeding towards trial. That's what we believe based on this record. Okay. There's another procedural question, and that is can a court enter an injunction without articulating the basis for its finding of substantial likelihood of success on the merits? Of course not. Rule 52 requires the court for an injunction to state the findings specifically. Why isn't it enough to just say I credit their infringement charts? Well, Your Honor, there are disputed issues. There's at least four claims instruction issues, hotly contested, that we raised, and each one leads to non-infringement. It's accepted. The digital court didn't even deal with that, and if you look at the claims charts that you referenced, they don't talk about claims instruction. There was no claims instruction done by Celgard in their opening papers, including the expert declaration of Dr. White and the claim charts. So even if you were to credit the court with looking at them and adopting them, you still have hotly contested issues of non-infringement. And I will also mention, Your Honor, invalidity. We presented a substantial question of invalidity as to 586 patent. Is it true that you didn't raise it to your SIR reply? No, that's not true, Your Honor. If you look at the record, we raised this at, if you look at 8605 of the record, one of our captions in our opening brief is, there are substantial questions of the 586 patent invalidity. But then you have a very cursory paragraph that says, see the petitions filed at the board. I mean, is that enough in your view to raise this? If that is enough, Your Honor, we have 25 pages in this two-week response time. And they did the same thing with their expert. They attached an expert declaration. We attached an expert declaration from Dr. Abraham laying out why we believe, he laid out why claim one of the patent was not valid in light of this Tojo reference. And now currently there's four IPRs pending at the patent office. They've been instituted with a decision due in October. And the primary reference in all four is the Tojo reference. Have you asked for a stay based on those IPRs? We have not asked for a stay at this time because the injunction issue is, at this point, needs to be resolved in our view. So not only do we have the non-infringement issues and the claim construction issues associated with them that was not addressed by the judicial court. Well, you all both spend a lot of time in your briefs telling us about these non-infringement and validity issues. But can we really reach those in the first instance? Well, what I do think is that there are issues that the court could address and to resolve the preliminary injunction issue and reverse it on the record. And because I think it wouldn't be efficient for this court to simply vacate and send it back down and come right back up again. The court would flesh out the viewpoints the court had on these various issues. Now, we think we should prevail on the substance of the non-infringement and the validity arguments. And at a minimum, there's going to be no likelihood of success. And we believe the court should resolve that here while it's on appeal. Can we do that if we don't have jurisdiction? Well, again, Your Honor, we're in this situation because of what the judge did below. But clearly, if there's an outright reversal of the preliminary injunction, then we go back down and then we would have avoided the situation where LG was enjoined when the court didn't have any jurisdiction. That issue is avoided if there's a complete reversal. And that's what we would, of course, invite the court to do. Can we talk about the irreparable harm? Yes. Because I understand your argument. You're saying that the harm flows – to the extent there's any harm, it flows from the state law claims and from the fact that LG doesn't want to do business anymore. And that it doesn't flow from the infringement. But obviously, the district court felt that the two were tied together because if you couldn't distribute infringing products or allegedly infringing products, then by definition, his view was you'd have to go back to your relationship with Celgard. So how do you respond to that? Well, there's a few issues there. First of all, the presence of this court requires a strong causal nexus. And in order to test that proposition, you ask yourself, if LG is enjoined today, what happens to Celgard? Celgard would be in the exact same position tomorrow as it is today. And that's because LG would be enjoined, not making batteries. Presumably, they'd get a new contract. Well, but if that's the use of the injunction. If the use of the patent injunction is specific in performance, we have a real problem with that because that's not what the patent injunction is for. It's an exclusive right. It is not to enforce commercial relationships. As the court said in the Apple decision, the point of the causal nexus requirement is you don't want to leverage the patent for improper commercial purpose. That's exactly what the district court did below. Even assuming they win their patent infringement case, they can't get an order from the district court ordering you to buy product from them, can they? They cannot. At most, they can get damages or a license or a reasonable royalty rate. They could absolutely do that, right. And if we went to trial and they prevail on all the claims, we believe an injunction would be improper and there would be a damages case. In fact, this is a damages case. Is CellSource the sole supplier? CellGuard. CellGuard, I'm sorry. CellSource is what it is. Yeah, CellGuard is – there are other competitors of CellGuard. It's a tiered supply chain and at the tier that CellGuard is at, tier two, there's a lot of competitors. And LG is tier one. We supply to Apple. We supply to Bell, HP. We supply to General Motors, Ford, Chrysler. We're supplying to the OEM. They're supplying to us. That's why the injunction makes no sense here. As far as we're aware, this court has never sustained an injunction, preliminary injunction, post eBay where the parties before it weren't direct competitors. And that's because the analysis completely breaks down. And you can't get that causal nexus that's required. And the harm is simply not there. And I think the fact that they amended the complaint to add state law claims, it's very telling. Because this is about a commercial relationship that went sour. That's what happened. That's what's going on here. And money damages surely will do, not only from the state law claims, but if there's patent infringement. We don't believe there is, but if there is, it's about money. It's about a licensing fee. And, in fact, there's a history. They offered to give you a license before they filed suit and the like. Yes, Ron. They've licensed others in the industry, and they've actually offered us a license after the relationship broke down. And the reasoning in the Paulus Declaration, there's a statement at 101. The reasoning is because they wanted to avoid litigation. They wanted to license it. So, was Celgard your only supplier of the base film before this relationship broke down? Celgard was. The sole source. Yes. Since 2008, LG was getting supply for the consumer electronics business from other suppliers. They were not using Celgard. So, in other words, from 2008 until the case was filed in 2014, we were allegedly infringing this patent in the CE business, and they did nothing about it. And now, all of a sudden, this injunction is so sweeping, it stops us from selling anything. Did you assert latches? We certainly are making that, and we finally have answered the complaint. We made that argument. And, of course, the paperwork below, we argued that the delay alone is contrary to the notion that there's irreparable harm. And the fact that they now are claiming there's irreparable harm in the CE business is wholly unsupported by the record. You will look in vain in this record to find any evidence of irreparable harm with respect to CE business. They didn't touch that in the district court. And this injunction is so sweeping, it stops us from selling anything in the CE business to Apple, HP, Dell, and others. We're out, according to this injunction, and all the harms associated with it. It's a very sweeping injunction, and it's simply not supported by this record. With respect to balancing of the harms and the public interest, and it gets back, Your Honor, to where you started. Well, your amicus brief. Yes, the amicus brief, of course, confirms what we were saying below in the district court, that enjoining LGE will halt the supply chain in these major industries. And, of course, that was not something the district court credited at all. The way the district court viewed this, and we think it was an improper way to view it and frame the issue, was that, well, LGE would just simply have to pay more. Or the downstream customers, the customers of Apple and Dell and Ford, they might have to pay a little more for their end products. That's the way the court viewed it. But that is not the proper viewpoint, because that assumes that we're going to get back into a supplier relationship, and it's all about just paying more. It wasn't about that. In fact, when the relationship broke down between the parties, Celgard wasn't meeting the supply chain timeline. Celgard, the quality problems, and, of course, there were pricing problems. There was a lot of reasons why the relationship broke down between the two parties. And the judges equated it to just paying more for the base film, and everything would work out. And it was an improper framing of the issue. So we urge the court to reverse the preliminary injunction and remand the case to go towards trial, and then avoid – we think you can avoid the personal jurisdiction issue if you do that. With that, I will reserve the rest of my time. Okay. Thank you. Good morning. Martin Lueck for Celgard. May it please the court. I'd like to start with the – Mr. Lueck, on page 30 of your red brief, you say LG Chem could purchase separators from Celgard. Indeed, that is precisely what LG Chem did during the five years in which it partnered with Celgard to qualify its EV batteries. If it did that – you say it could do that. If it did that, how exactly does that prevent infringement? There would be an implied license in using the Celgard base film material as the base for the ceramic-coated separator. On the next page, you say, this unsupported statement does not provide any proof of potential harm to affect the public interest analysis. That reference is confidential information contained in the paragraph immediately preceding, so I'm not going to say what it was. But after reading the amicus brief submitted by GM and Ford Motor Company, can you still – do you still stand by that statement? Your Honor, yes, we believe that LG could purchase the material from Celgard as it had done for five years. What does that have to do with patent? What it has to do with patent is that Celgard is – the competitor relationship here isn't between – directly between LG and Celgard. It's between Celgard and other suppliers of the base film. If Celgard licensed the 586 patent to LG, how does that resolve the problems you raise about, say, loss of workforce? It resolves it because in every case where Celgard made an offer of a license or entered into a license, it did so to make a strategic alliance so that it would sell more of its base film product as a part of the license. So this is all – all of this is damages stuff, isn't it? It's monetary damages. I don't agree, Your Honor, and I'll tell you – the reason I don't agree is to look at the Broadcom versus Amulux case. This is a design-win market, and this is the type of harm that the court found. And the court elucidated on the harm in the record in the hearing at page 1457 and 1458. I'll just make sure I've given the correct citations. It is 1457 and 1458. And if the court looks at the Broadcom versus Amulux case, and in particular, I'd also suggest that the district court's opinion out of the Central District of California is instructive. What's happened here is that Celgard has been frozen out of the innovation loop by being excluded from the plug-in EV ceramic-coated separator market. And GM's brief goes at page 7 and 8 directly to this point because it takes a long time to get one of these batteries certified. Here, it took 240 weeks once LG had come to Celgard to get the technology it needed to go to GM for the Chevy Volt, as an example. And so now, Celgard, and at the time LG came, you can look at the declaration of Mr. Lee, no one else would work with LG. How come Celgard didn't assert its patent in the five or six years prior? Because at that time, Celgard was selling products to LG, and LG wasn't infringing the patent. It wasn't infringing the patent at all? Well, it wasn't infringing the patent in the EV market. How were they infringing? They're doing the same thing that they were doing afterwards. Is it based upon this implied license? Yes, Your Honor. Well, if an implied license is good enough previously to solve your patent infringement problems, why isn't an actual license enough to solve your patent problems after the fact? The problem after the fact is that we no longer have access to that market. We're no longer a part of the design-win calculation. But how is that connected to the infringement issue? I mean, if you win your infringement case in the district court, what kind of relief are you going to get? The district court can't order them to start buying stuff from you, can they? No, the district court cannot order that. They can order damages. They can order ongoing royalties or the like. So how is that stuff, which is damages, not a reasonable way for you to recover instead of this injunction? Well... Which essentially is a threat to either you buy from you or you don't get to operate your company. We believe that the commercial response to the injunction would be to go back to the status quo, which was... Which is something you can't get if you win your patent case. The positive injunction, I agree with you. But the injunction lies nonetheless. And this court employed a similar... You don't even sell the product that's covered by the patent, correct? We don't sell it into this market, that's correct. So what's the likelihood that a court would ever order a permanent injunction if it was going to prevent the market from ever going forward? In other words, if that permanent injunction says the product can never be had by anybody and never be offered by anybody, because it's not a situation where you're a competitor and you want to offer the product. That's correct. However, there are other battery manufacturers who can take advantage of the patent and who can take advantage of Celgard's base film and ultimately supply those markets. And are there any that have? There are alternatives to the way that it's being done here. And Celgard is selling to others. There is not an alternative specifically today to the Chevy Volt, for example, or to the Ford products, as I've stated. It takes a long time to get the recertification. But what happened here was when LG didn't want to use Celgard any longer, they went to 3M, or excuse me, they went to GM, and they said we're going to use the senior base film. GM said it's the same specs. We'll allow you to do that. So there are alternatives in the marketplace. Let's go back to the threshold question. Yes. Even if we accept your proposition that somehow this one-sentence reference to your infringement charge was enough for purposes of likelihood success on the merits, how do we let an injunction stand when at the time the court had not even assessed whether it had personal jurisdiction over the defendant and the defendant was challenging whether it had personal jurisdiction? I certainly agree with the court. It would have been more ideal had the district court addressed that question in the initial order. We now have an order in place. This court has held in previous cases as United Association of Importers of Textiles and Apparel that the issue of personal jurisdiction can be addressed in a context such as this on appeal without remand. And the way I think the court could address it here is by looking to the order that the district court entered. It's in as docket number 114. As to LG Chem, our argument is purposeful availment of the forum state. Do you want us to wrap the personal jurisdiction question into this appeal? I do, Your Honor. So, I mean, I'm a little surprised by that because, you know, if we send the injunction back and the court rethinks it, it may either issue another injunction or not. But if he chooses not to issue another injunction, then you get to ride with his personal jurisdiction decision for the rest of the trial until there's an appeal. Well, here is what I would suggest as a practical matter, Your Honor. If the court is considering a remand, I would suggest a remand with some direction. The personal jurisdiction issue certainly is one that the court could reconsider if the case were to be remanded for further findings, for example, on infringement. And at that time, we would, you know, we would make our arguments anew. And hopefully if this case came back up, then all of that would be in front of the court at the same time. Or you're saying, now I'm not sure I'm familiar with the case where we decided that we can do it on appeal in the first instance, but you're saying that perhaps we have asked for additional briefing on the personal jurisdiction question right now? Well, you know, it creates a practical issue for the court given that the court below didn't rule until May. We addressed the personal jurisdiction issue at pages 34 and 35 of our red brief, specifically on the case that I just quoted, the U.S. Association of Importers of Textiles and Apparel. And the facts, I think, are fairly well laid out. And they're also supported by what the district court found at page 39 of docket submission 114. So I believe that this court wished to exercise its discretion in the first instance. While not ideal, not regular, it has been done before in that context and could do so here. So supposing we determined that there was no personal jurisdiction, can we even address the propriety of the preliminary injunction? If you were to determine that there were no personal jurisdiction, as opposed to sending it back to the court for further findings, there's no personal jurisdiction, there's no jurisdiction. Case is over for you anyway. Case is over. And you think we can get to that question now? I'm a little confused by that or why you've even agreed to that. I mean, I assume you're confident about your position, but it seems like you would rather, because that order was made after the appeal, it's not before us, we don't have that before us. Are you saying that somehow we can just sweep it all in? Well, the brief we submitted was before this order came out. And so the case that I cited to the court did not have the circumstance Your Honor is referring to. Namely, appeal and then the order arising after the case has been submitted. So it puts this court in a difficult position in terms of... Well, it would seem pretty irregular for us to review that personal jurisdiction order when it's not part of the appeal. I agree. And so the argument that we made before this order was issued is that you can look at the record that was created, the record that was before the court below, and personal jurisdiction is apparent. All right, let me just briefly address the infringement issue. And it is... While the court did not make lengthy reference to its findings in the order on likelihood of success, what was before the court was the declaration of the expert white and three supporting claim charts, supporting claim one. There was no corresponding declaration opposing infringement that was submitted by LG in this case. And so what the court was confronted with was basically the point of view of one party adequately supported. The only issues that were raised were four claim construction issues. There was no need for the court to reach those. In every instance, it was an attempt to read a limitation into the claim. I can go through them briefly in anode. It was an attempt to read... Wait, but if the court didn't reach them, are you saying that you were willing to stipulate to the proposed construction by the other side? No. So you're saying the court did reach them. I'm saying that impliedly the court accepted the claim constructions of Selgard. Impliedly? That's what I'm saying, Your Honor. And that's not good for you, right? Well, you know, in accordance with this court's decision in Reebok, even where there aren't explicit findings, if the... Well, where there are none? There were no statements as to the claim construction issues. That is correct, Your Honor. That's not what Reebok says. Well, Reebok says it has to be adequately supported by the evidence. This court looks at claim construction de novo. I think you can look at each of these four claim terms and see that the arguments that have been presented are not supported in the following sense. With anode, they're trying to read the specification into the claim. Same is true with the claim term... Let me just get to the... Ceramic composite layer. And in both cases, the specification says at column four, line 33 through 37, that reference should be made to the appended claims rather than to the foregoing specification and claims broadly. In the case of the matrix material and adapted to at least blocked dendrite growth, there's nothing in the patent that supports... So you're saying that we can do claim construction for the first instance on appeal if it's easy? I'm saying that you can review the claim construction positions of the parties and you can affirm the lower court on the claim constructions based upon a straightforward application of plain meaning. Okay. Want to wrap up and wrap up? Eight seconds. I think I've covered the high points. If there are no further questions, I'll sit down. Thank you, Your Honor. Just a few points. Thank you. I believe counsel mentioned that we had no opposing expert declaration. That's simply not the case. The Blomberg declaration at 8, 931 of the record. Extensive discussion of why we don't infringe based on the claim construction. Do you think we can reach the personal jurisdiction right now for the first time when the order is afterwards? I mean, I understand you'd like us to enroll if we were going to enroll in your favor, but it would seem to me very highly irregular for us. Certainly irregular. That's for certain. And that's based on what the district court did below, which is regular. But there is this doctrine of the pendant-impellant jurisdiction where you can grab jurisdiction over this order that otherwise is not appealable because it's inextricably intertwined with the injunction order. We could certainly say that the court erred by not reaching it and granting the injunction. With that, we could certainly say. That you certainly could say and you vacate the injunction. But what we're urging, of course, is that the court reverse the injunction to go back down and come back up based on this issue, which it needs to be dealt with, certainly. But to do that, we think it's inefficient. We think the court should reverse the injunction. So that's our view on that. But there is preference to do that if the court were inclined to do that. Just a few points on the non-infringement issue. The record as it stands, it's unrebutted testimony from a declaration we put in from an engineer at A922 of the record that dendrites don't even grow in our batteries. We don't even have dendrites. The problem is resolved through other means. And the record also demonstrates that even if they were to grow, they would grow right through our separator, which is very porous. So on that issue alone, there is no infringement if the court were to reach this issue. The Broadcom MLS case, that case were direct competitors. The design wins were against direct competitors. We simply do not have that. And again, going back to the purpose of the injunction remedy, it is to maintain the situation during the penalty of the lawsuit to stop the irreparable harm from occurring. If an injunction was to enter in this case, it simply would not do that. And getting back to the disposition, how this court should dispose of this case, this injunction has placed a cloud over LG's business. It would stay, fortunately, but it's a cloud over our business. It's maintaining a cloud over our business and indeed the industry of all our downstream customers. So we believe that the court should reach it and reverse it. And with that, I will sit down. Thank you. Case will be submitted.